# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LINDA METCALF and    :
ROSS METCALF     : No.: 07-CV-03119-MLC-TJB
    Plaintiffs,  :
         :
  v.       :
         :
MERCK & CO., INC.    :
    Defendant.  :

## <u>ORDER</u>

AND NOW, this _____, day of _____, 2007, it is hereby ORDERED

and DECREED that Plaintiffs' Motion to Remand is GRANTED and the above-captioned action

is remanded to the Superior Court of New Jersey, Middlesex County.

        _____
        J.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LINDA METCALF and                    :
ROSS METCALF                         :        No.: 07-CV-03119-MLC-TJB
   Plaintiffs,           :
             :
  v.                          :
             :
MERCK & CO., INC.                    :
   Defendant.            :

### PLAINTIFFS' MOTION TO REMAND

In support of their Motion to Remand, Plaintiffs aver as follows:

1. On Friday, June 29, 2007, Plaintiffs, Linda Metcalf and Ross Metcalf, instituted a civil action in the Superior Court of New Jersey, Middlesex County, Law Division, against Merck & Co., Inc. (hereinafter "Merck"). The Middlesex County Superior Court assigned Docket Number L-5836-07 to the instant matter.

2. Plaintiffs' Complaint alleged causes of action against Defendant for personal injuries sustained by Linda Metcalf after she ingested Fosamax, a prescription medication manufactured, marketed, distributed and sold by Merck. *See* copy of Plaintiff's Complaint attached hereto as Exhibit "A".

3. Before Plaintiffs could serve Merck with a copy of Ms. Metcalf's Complaint, Merck filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 on or about Tuesday, July 3, 2007. *See* Notice of Removal Petition attached hereto as Exhibit "B".

4. It is clear that Merck is monitoring the civil docket in order to ambush the Plaintiffs with a Notice of Removal before service can be accomplished. Merck filed the Notice of Removal two business days after Plaintiffs filed their suit essentially eliminating Plaintiffs'

choice of forum. As a matter of fact, the Notice of Removal was filed before the Court returned a time-stamped copy of the Complaint to Plaintiffs' counsel.

5. In its removal papers, Merck confirms that, for purposes of determining jurisdiction pursuant to 28 U.S.C. §1332(c)(1), it is a citizen of the State of New Jersey. *See* Exhibit "B", ¶ 15.

6. Despite the fact that Defendant acknowledges that it is a citizen of New Jersey, the forum state, Merck contends that this Court has original subject matter jurisdiction because "complete diversity of citizenship exists between "plaintiff and all properly joined parties." *See* Exhibit "B", ¶6.

7. The law on this issue is clear: 28 U.S.C. §1441(b) provides that a diversity case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This rule is often called the "Forum Defendant" rule. Because Merck is a citizen of the forum state, as it plainly admits, removal is not permissible.

8. In light of this clear black-letter law, Plaintiffs can only assume that because Defendant was not yet served with a copy of the Complaint, it will make the previously tried, but rejected, argument that it has not been "joined and served" as required by Section 1441(b) and, therefore, is free to seek removal. This analysis is fatally flawed.

9. There is conflicting case law that has addressed the present issue before this court – whether a forum defendant can remove a case before any defendant has been served with the Complaint. Two Courts found that removal was improper and ordered remand. *See Holmstrom v. Harad*, No. 05 C 2714, 2005 U.S. Dist. LEXIS 16694 (N.D. Ill. Aug. 11, 2005) and *Recognition Comm., Inc. v. American Auto. Ass'n, Inc.*, No. 3:97-CV-0945-P, 1998 U.S. Dist.

LEXIS 3010 (N.D. Tex. Mar. 5, 1998); *see also Frick v. Novartis Pharms. Corp.*, Civ. No. 05-5429 (DRD), 2006 U.S. Dist. LEXIS 9178 (D.N.J. Feb. 22, 2006) and *Thomson v. Novartis Pharms. Corp.*, No. 06-6280, 2007 U.S. Dist. LEXIS 37990 (D.N.J. May 22, 2007).

10. An exception to the diversity of citizenship standard is the "Forum Defendant" rule. Congress promulgated this rule because it recognized that a Defendant in its resident state will not be "hometowned" by the court process. Granting Merck's removal petition will undermine the spirit of the law as well as the weight given to Plaintiffs' forum choice.

11. Plaintiffs rely upon the attached Memorandum of Law in support of their Motion to Remand.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' Motion to Remand and return this matter to the Superior Court of New Jersey, Middlesex County.

Respectfully submitted,

**Anapol, Schwartz, Weiss, Cohan,
  Feldman & Smalley, P.C.**
DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
1040 Kings Highway North, Suite 304
Cherry Hill, NJ 08034
(856) 482-1600 (PH)
(856) 482-1911 (FX)
Attorneys for Plaintiffs

Dated: August 1, 2007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA METCALF and | : | |
| ROSS METCALF | : | No.: 07-CV-03119-MLC-TJB |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MERCK & CO., INC. | : | |
| Defendant. | : | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND</u>

**Anapol, Schwartz, Weiss, Cohan,
  Feldman & Smalley, P.C.**
DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
1040 Kings Highway North, Suite 304
Cherry Hill, NJ 08034
(856) 482-1600 (PH)
(856) 482-1911 (FX)
Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

I.     FACTUAL HISTORY .................................................................................................. 1

II.    LEGAL ARGUMENT ................................................................................................. 1

       A.    Standard of Review .................................................................................... 1

       B.    Plaintiffs' Choice of Forum Would be Destroyed if Defendant's Removal
             Petition Is Allowed ..................................................................................... 2

       C.    Legal Precedent Requires Remand ............................................................ 3

             1.    Statutory Language ......................................................................... 3

             2.    Caselaw also Calls for Remand ...................................................... 4

III.   CONCLUSION............................................................................................................. 7

# TABLE OF AUTHORITIES

## Cases

*Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*,
  21 F. Supp. 2d 465 (D.N.J. 1998) ............................................................. 2

*Dukes v. U.S. Healthcare, Inc.*,
  57 F.3d 350 (3d Cir.), *cert. denied*, 516 U.S. 1009 (1995) .......................... 2

*Finley v. United States*,
  490 U.S. 545(1989)...................................................................................... 2

*Frick v. Novartis Pharms. Corp.*,
  Civ. No. 05-5429 (DRD), 2006 U.S. Dist. LEXIS 9178 (D.N.J. Feb. 22, 2006) ...................... 6

*Gateway 2000, Inc. v. Cyrix Corp.*,
  942 F. Supp. 985 (D.N.J. 1996) ................................................................. 2

*Holmstrom v. Harad*,
  2005 U.S. Dist. LEXIS 16694 (N.D. Ill. Aug. 11, 2005) .................................. 4, 5, 6

*Newcomb v. Daniels, Saltz, Mogeluzzi & Barrett*,
  847 F. Supp. 1244 (D.N.J. 1994) ............................................................... 2

*Recognition Comm., Inc. v. American Auto Ass'n, Inc.*,
  1998 U.S. Dist. LEXIS 3010 (N.D. Tex. Mar. 5, 1998) ...................................... 3, 5

*Thomson v. Novartis Pharms. Corp.*,
  No. 06-6280, 2007 U.S. Dist. LEXIS 37990 (D.N.J. May 22, 2007)........................ 6

## Statutes

28 U.S.C. §§1332 and 1441 ....................................................................... 1

28 U.S.C. §1447.......................................................................................... 1

Plaintiffs, Linda Metcalf and Ross Metcalf, submit this Memorandum of Law in Support of their Motion to Remand the above-captioned action.

## I.    <u>FACTUAL HISTORY</u>

Plaintiffs, Linda Metcalf and Ross Metcalf, initiated an action against Merck & Co., Inc. (hereinafter "Merck") in the Superior Court of New Jersey, Middlesex County on Friday, June 29, 2007. *See* Ex. "A". The case was docketed as L-5836-07. The Complaint alleges causes of action for personal injuries sustained by Ms. Metcalf after ingesting the prescription medication, Fosamax.

Before the time-stamped copy of the Complaint was even returned to Plaintiffs' counsel for service on Defendant, Merck filed a Notice of Removal with the Clerk for the United States District Court of New Jersey on or about Tuesday, July 3, 2007. *See* Ex. "B". In its removal petition, Merck simply states that complete diversity of citizenship exists between the parties and, therefore, removal is proper under 28 U.S.C. §§1332 and 1441. Merck filed its Notice despite the law on the issue: an action is only removable if none of the defendants in interest is a citizen of the state in which the action is brought. Notably, Merck' removal papers confirm that it is a citizen of New Jersey for jurisdictional purposes.

In light of this clear legal precedent, Plaintiffs now file this Motion to Remand within thirty (30) days of the Notice of Removal pursuant to 28 U.S.C. §1447. For the following reasons, Plaintiffs respectfully request that their motion be granted and an Order be issued remanding this matter back to Middlesex County, Superior Court.

## II.    <u>LEGAL ARGUMENT</u>

### A.    **Standard of Review**

Federal courts have recognized that "due regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the

precise limit which the statute has defined." *Finley v. United States*, 490 U.S. 545, 552-553(1989). Thus, "federal removal statutes are to be strictly construed, resolving any doubts in favor of remand." *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F. Supp. 985, 989 (D.N.J. 1996). It has been further held that, "When confronted with a motion to remand a matter to state court, the removing party has the burden of establishing the propriety of removal." *Id.*, citing *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir.), *cert. denied*, 516 U.S. 1009 (1995). To carry this burden, "the removing party must show Federal subject matter jurisdiction exists and that removal is proper." *Id.*

For the reasons that follow, Defendant Merck has failed to meet this burden. Accordingly, remand is proper.

### B. Plaintiffs' Choice of Forum Would be Destroyed if Defendant's Removal Petition Is Allowed

Courts of this District have consistently held that a plaintiff's choice of forum is to be given great weight. *See Newcomb v. Daniels, Saltz, Mogeluzzi & Barrett*, 847 F. Supp. 1244 (D.N.J. 1994) ("[C]ourts assign the plaintiff's choice of forum significant weight unless the case has little connection with the subject chosen forum."); and *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465 (D.N.J. 1998) ("Courts of this circuit have noted, 'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum prevails.'").

While these cases dealt with venue issues, the premise is the same – plaintiffs have a right to litigate their case in a forum of their choice, whether it be federal or state courts or New Jersey or Pennsylvania. Allowing Merck or any defendant to interfere with this strongly held legal principle would cause great inequity.

It is clear from the facts of this case that Merck is monitoring the docket in order to ambush Plaintiffs and eliminate their choice of forum. In this case Merck filed a Notice of Removal merely three business days after Plaintiffs filed their lawsuit. Plaintiffs had not even received the time-stamped copy of the Complaint back from the Court. If Merck's conduct is permitted, it is conceivable that any corporate defendant of New Jersey could monitor every county's docket and as soon as a Complaint against it was filed, it could file a Notice of Removal almost instantaneously, even before a time-stamped copy of a complaint is returned to plaintiff's counsel for service. For example, it is possible in today's highly technical world for a corporate defendant to monitor a docket and, if a complaint is filed against it, type a few specifics into a previously prepared Notice of Removal form, then e-mail the Notice to a colleague sitting in a federal courthouse. That colleague could, in turn, print the Notice using a portable printer and then file the Notice of Removal before a plaintiff could even have a process server drive the complaint to the corporate defendant for service. This scenario is unjust to plaintiffs and was certainly not the intention of Congress when it enacted the "Forum Defendant" rule.

### C. Legal Precedent Requires Remand

#### 1. Statutory Language

When deciding a diversity-based removal petition, the Court applies a two-step test: (1) the parties must fulfill the requirements of Section 1441(a) by being completely diverse; and (2) according to Section 1441(b), the named and served defendants cannot be residents of the state in which the suit is brought. *See Recognition Comm., Inc. v. American Auto. Ass'n, Inc.*, No. 3:97-CV-0945-P, 1998 U.S. Dist. LEXIS 3010 (N.D. Tex. Mar. 5, 1998). Plaintiffs are residents of the Commonwealth of Pennsylvania and Merck acknowledges in its Notice of Removal that it is a citizen of the State of New Jersey. *See* Ex. "B", ¶15. The first part of the test is satisfied as the parties are completely diverse. However, the second prong of the test, often referred to as the

"Forum Defendant" rule, fails as Merck is both a resident and citizen of the forum state – New Jersey.  The statutory language on this issue is clear and the case should be remanded.

### 2.    Caselaw also Calls for Remand

Despite this statutory language, Plaintiffs understand that because Merck was not yet served with a copy of the Complaint, it will make the argument that it has not been "joined and served" as required by Section 1441(b).  This argument should not be considered by the Court.

Plaintiffs respectfully suggest that this Court focus on two cases which closely mirror the present facts.  *See Recognition Communications*, 1998 U.S. Dist. LEXIS 3010; and *Holmstrom v. Harad*, No. 05 C 2714, 2005 U.S. Dist. LEXIS 16694 (N.D. Ill. Aug. 11, 2005).

In *Recognition*, Plaintiff filed suit against the American Automobile Association, Inc. ("AAA"), Auto Club of Southern California, Inc. ("ACSC"), AAA Club Services, Inc. ("Club Services") and AJR & Associates ("AJR").  *See Recognition*, 1998 U.S. Dist. Lexis 3010 at *3. Prior to serving the defendants with the Complaint, Recognition sent courtesy copies of the Complaint to each defendant with a cover letter explaining that service of process was being temporarily withheld in anticipation of a quick and inexpensive resolution.  *Id*.  On April 24, 1997, before Recognition had formally served any of the Defendants, AAA, ACSC, and Club Services filed a Notice of Removal.  *Id*.  Shortly thereafter, Plaintiff filed a Motion to Remand as Defendant AJR was a citizen of Texas.  *Id*. at *4.  The Texas District Court summarized the Removing Defendants' position, stating:

> In short, the Removing Defendants argue that AJR's citizenship should not be considered when determining removability under Section 1441(b) because Plaintiff had not served AJR at the time the removing Defendants filed the Notice of Removal.  While the Court finds the argument of the Removing Defendants interesting, the Court disagrees.

The opinion further held,

> Although the Court recognizes that the deadline clock was running on Defendants' thirty days to remove (since Plaintiff sent each Defendant a courtesy copy), the Removing Defendants were not free to ignore AJR's status as a Defendant in this matter simply because Plaintiff had not served AJR; Plaintiff did not serve anyone before the Removing Defendants filed the Notice of Removal.

*Id*. at *7.[1]

The *Holmstrom* opinion too found that removal was not appropriate. *Holmstrom*, supra. In *Holmstrom*, Plaintiff filed a shareholder derivative action in the Circuit Court of Cook County, Illinois, against twenty-eight officers and directors of OfficeMax, Inc., a Delaware corporation. *Id.*, 2005 U.S. Dist. LEXIS 16694, One of the defendants, an Ohio resident, removed the case to the United States District Court for the Northern District of Illinois. *Id.* at *2. At the time of removal, the plaintiff had not served any of the twenty-eight defendants. *Id.* The Illinois District Court recognized the issue before it: whether, under Section 1441(b), the citizenship of a forum defendant defeats removal when, prior to removal, no defendant has been served or otherwise appeared. *Id.* at *4.

In researching the question presented, the Court found that only the *Recognition* opinion had dealt with this issue. *Id.* The *Holmstrom* Court followed the holding in *Recognition*, stating as follows:

> While observing that the citizenship of an unserved forum defendant should generally be disregarded for removal purposes under §1441(b), the court crafted a limited exception to this rule in cases where no defendant had been served prior to removal. U.S. Dist. LEXIS 18744, at 3, n.3.
>
> We agree with the result reached in *Recognition Communications*.

---

[1] In a footnote, the Texas District Court stressed the limited scope of this decision. Had service of process been issued to any one of the Removing Defendants, the Court would have upheld removal. However, the Court noted that none of the parties were served as is the case here. *Id.* at *7, n3.

*Id*.  The Court further understood that there may be tension between this ruling and the "joined and served" requirement under Section 1441(b).  The Court even reasoned that the "joined and served" rule makes sense when one defendant has been served but the named forum defendant has not as a plaintiff should not prevent removal simply by naming, but not serving, a resident defendant.  *Id*. at *6. However, when no defendant has been served, the non-forum defendant stands on equal footing as the resident defendant – neither one is obligated to appear in court.  *Id*.  Without this obligation, there is no concern that the out-of –state defendant will be "hometowned". [2]

As such, Plaintiffs request that their action be remanded to the Middlesex County Superior Court.

---

[2]  Plaintiffs are aware of the *Frick* and *Thomson* rulings in the United States District Court of New Jersey (*see Frick v. Novartis Pharms. Corp.*, Civ. No. 05-5429 (DRD), 2006 U.S. Dist. LEXIS 9178 (D.N.J. Feb. 22, 2006) and *Thomson v. Novartis Pharms. Corp.*, No. 06-6280, 2007 U.S. Dist. LEXIS 37990 (D.N.J. May 22, 2007)).  However, in light of the *Holmstrom* and *Recognition* decisions, as well as the facts surrounding the timing of the Notice of Removal in this matter, Plaintiffs respectfully request that these decisions not be followed in this case.

## III.  CONCLUSION

Given the foregoing analyses, Plaintiffs respectfully request that this Honorable Court grant their Motion to Remand and transfer this matter back to the Superior Court of New Jersey, Middlesex County.

Respectfully submitted,

**Anapol, Schwartz, Weiss, Cohan,
  Feldman & Smalley, P.C.**
DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
1040 Kings Highway North, Suite 304
Cherry Hill, NJ 08034
(856) 482-1600 (PH)
(856) 482-1911 (FX)
Attorneys for Plaintiffs

Dated:  August 1, 2007

# EXHIBIT A

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE :   CK    CG    CA |
| CHG / CK NO. |
| AMOUNT : |
| OVERPAYMENT : |
| BATCH NUMBER : |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| David Jacoby, Esq. & Tracy A. Finken, Esq. | ( 856 )482-1600 | Middlesex County |

**FIRM NAME (If applicable)**
Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.

**DOCKET NUMBER (When available)**
L-5836-07

**OFFICE ADDRESS**
1040 Kings Highway North, Suite 304
Cherry Hill, NJ 08034

**DOCUMENT TYPE**
Complaint

**JURY DEMAND**  [x] YES  [ ] NO

| NAME OF PARTY (e.g. John Doe, Plaintiff) | CAPTION |
| --- | --- |
| Linda Metcalf & Ross Metcalf, W/H | Metcalf v. Merck & Co., Inc. |

**CASE TYPE NUMBER**
(See reverse side for listing)  606

**IS THIS A PROFESSIONAL MALPRACTICE CASE?**  [ ] YES  [x] NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?**  [ ] YES  [x] NO
**IF YES, LIST DOCKET NUMBERS**

**DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?**  [ ] YES  [x] NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN**
[ ] NONE  [x] UNKNOWN

FILED & RECEIVED 2007 JUL 23 AM 11:15 N.J. MIDDLESEX CIVIL RECORDS

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  [ ] YES  [x] NO
IF YES, IS THAT RELATIONSHIP:  [ ] EMPLOYER - EMPLOYEE  [ ] FRIEND / NEIGHBOR  [ ] OTHER (explain) _____
[ ] FAMILIAL  [ ] BUSINESS

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  [ ] YES  [x] NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  [ ] YES  [x] NO
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

WILL AN INTERPRETER BE NEEDED?  [ ] YES  [x] NO
IF YES, FOR WHAT LANGUAGE:

**ATTORNEY SIGNATURE**

Revised July 2001

| | |
|---|---|
| **SIDE 2** |  |

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track 1 -- 150 days' discovery

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY |
| 502 | BOOK ACCOUNT |
| 503 | COMMERCIAL TRANSACTION |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 599 | CONTRACT |
| 801 | SUMMARY ACTION |

### Track II -- 300 days' discovery

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT - OTHER |

### Track III -- 450 days' discovery

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV -- Active Case Management by Individual Judge / 450 days' discovery

| | |
|---|---|
| 156 | ENVIRONMENTAL COVERAGE LITIGATION |
| 234 | FRT PLYWOOD LITIGATION |
| 245 | ACTIONS UNDER FEDERAL Y2K ACT |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 613 | REPETITIVE STRESS SYNDROME |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRIT |

### Mass Tort (Track IV)

| | |
|---|---|
| 240 | DIET DRUG |
| 241 | TOBACCO |
| 243 | LATEX |
| 246 | REZULIN |
| 601 | ASBESTOS |
| 611 | BREAST IMPLANT CASES |
| 612 | BLOOD-CLOTTING SERUM |

| | |
|---|---|
| 999 | OTHER (Briefly describe nature of action) _____ |

_____

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
BY:   DAVID JACOBY, ESQUIRE
         TRACY A. FINKEN, ESQUIRE
         GREGORY S. SPIZER, ESQUIRE
1040 KINGS HIGHWAY NORTH
CHERRY HILL, NJ 08034
(856) 482-1600; FAX (856) 482-1911
ATTORNEY FOR PLAINTIFFS

CIVIL RECORDS
N.J. SUPERIOR COURT
MIDDLESEX VICINAGE

2007 JUN 29  AM 11: 16

FILED & RECEIVED

## IN THE SUPERIOR COURT OF NEW JERSEY
## LAW DIVISION – MIDDLESEX COUNTY

| | | |
|---|---|---|
| LINDA METCALF, and | : | Civil Action No. *L* -5836-07 |
| ROSS METCALF, W/H | : | |
|     **Plaintiffs** | : | **Fosamax Litigation** |
| | : | |
| **v.** | : | |
| | : | **COMPLAINT, DEMAND** |
| MERCK & CO., INC. | : | **FOR JURY TRIAL,** |
|     **Defendant** | : | **DESIGNATION OF TRIAL** |
| | : | **COUNSEL AND NOTICE OF** |
| | | **NO OTHER ACTIONS** |

Plaintiffs, Linda and Ross Metcalf, by way of Complaint against Defendant, upon

information and belief, alleges as follows:

### PARTIES----PLAINTIFFS

1.      Plaintiff, Linda Metcalf, is a citizen of Ohio, residing at 5419 Lanark Court,

Dublin, Ohio 43017-8540.

2.      Plaintiff, Ross Metcalf, is a citizen of Ohio, residing at 5419 Lanark Court,

Dublin, Ohio 43017-8540.

3.      Plaintiff, Linda Metcalf, regularly ingested Fosamax in the months and years

leading up to her diagnosis of osteonecrosis of the jaw.

## PARTIES—DEFENDANT

4.     Defendant, Merck & Co., Inc. (hereinafter "Merck"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, NJ 08889.

5.     At all times relevant hereto, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling, and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical, Fosamax.

6.     At all relevant times, Defendant was responsible for, or involved in, designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing and/or selling its product, the prescription drug Fosamax.

7.     In September 1995, the United States Food and Drug Administration ("FDA") approved Defendant's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease. Alendronate is marketed by Defendant as "Fosamax."

8.     Fosamax falls within a class of drugs known as bisphosphonates, which are used for treating bone conditions such as ostepenia, osteoporosis and Paget's disease. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (Fosamax). The non-nitrogenous bisphosphonates include the following: etrinodate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for Fosamax confirms that the molecule contains a nitrogen atom.

9.     Throughout the 1990's and 2000's, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the

nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Defendant, particularly with its heightened knowledge and experience, knew or should have known that Fosamax, as a nitrogenous bisphosphonates, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

10.     Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates, including Fosamax, inhibit endothelial cell function. Similarly, Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patient's mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

11.     Defendant, particularly with its heightened knowledge and experience, also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That, in turn, can progress to widespread necrosis (bone death) and ostemony elitis (inflammation of bone marrow).

12.     Dentists are now being advised by dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on Fosamax.

13.     Once the jaw complications begin and become symptomatic, they are very difficult to treat and typically are not reversible.

14.     Shortly after Defendant began selling Fosamax, reports of osteonecrosis of the jaw and other various dental complications among Fosamax users began surfacing, indicating

that Fosamax shared the effects of other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study risk of osteonecrosis of the jaw relative to Fosamax. Rather than evaluating and verifying the safety of Fosamax with respect to osteonecrosis of the jaw, Defendant proposed further uses of Fosamax, such as Fosamax-D, and sought to extend the exclusivity period of Fosamax through 2018.

15.     Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

16.     Since Fosamax was released, the FDA has received a significant number of reports of osteonecrosis of the jaw among users of Fosamax.

17.     On August 24, 2004, the FDA posted its ODS Postmarketing Safety Review on bisphosphonates, including Fosamax. This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

18.     As a result of the FDA review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, Fosamax.

19.     Thereafter, the FDA recommended and stated that the labeling for Fosamax should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw. Defendant refused to accede to the FDA's request.

20.     Rather than warn patients, and despite Defendant's knowledge about the increased risk of osteonecrosis of the jaw on patients using Fosamax, Defendant continued to defend Fosamax, mislead physicians and the public, and minimize unfavorable findings.

4

21.     Fosamax is one of Defendant's top selling drugs, averaging more that $3 billion a year in sales.

22.     Consumers, including Plaintiff, who have used Fosamax for treatment of osteoporosis, had several alternative safer products available to treat their condition.

23.     Defendant knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but Defendant did not adequately and sufficiently warn consumers, including Plaintiffs, or the medical community, of such risks.

24.     As a direct result, Plaintiff was prescribed Fosamax and has been permanently injured, having suffered serious injuries and damages from the ingestion of Fosamax.  Plaintiff requires and will in the future require ongoing medical care and treatment.

25.     Plaintiffs have suffered mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained form the use of Fosamax.

26.     Plaintiff was prescribed and began taking Fosamax on or about June of 2000.

27.     Plaintiff used Fosamax as prescribed and in a foreseeable manner.

28.     As a direct and proximate result of using Fosamax, Plaintiff has suffered diffuse jaw pain and the loss of bone mass in the jaw and is currently in treatment for her condition.

29.     Plaintiff, as a direct and proximate result of using Fosamax, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

30.     Plaintiff used Fosamax which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

31.     Plaintiff would not have used Fosamax had Defendant properly disclosed the risks associated with the drug.  Alternatively, Plaintiff would have known of the risks of Fosamax and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

32.     Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking Fosamax.

33.     As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## COUNT I
### PLAINTIFFS v. MERCK
### PRODUCTS LIABILITY—FAILURE TO WARN (N.J.S.A. 2A:58C-2 *et seq.*)

34.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

35.     Defendant Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, Fosamax, and in the course of same, directly advertised or marketed the product to the FDA, consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Fosamax.

36.     Fosamax was under the exclusive control of Defendant as aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side effects and complications associated with the use of Fosamax, and the comparative severity, duration and the extent of the risk of injury with such use.

37. Defendant Merck has failed to timely and reasonably warn of material facts regarding the safety and efficacy of Fosamax so that no medical care provider would have prescribed, or no consumer would have used Fosamax had those facts been made known to such providers and consumers.

38. Defendant Merck has failed to perform or otherwise facilitate adequate testing in that such testing would have shown that Fosamax posed serious and potentially life-threatening side effects and complications with respect to which full and proper warnings accurately and fully reflecting the symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiffs.

39. Fosamax, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendant, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of Fosamax, Defendant failed to provided adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiffs, and continued to promote Fosamax aggressively.

40. As direct and proximate result of the conduct of Defendant Merck as aforesaid, Plaintiff was diagnosed with osteonecrosis of the jaw causing permanent injury to Plaintiff, Linda Metcalf, and causing physical, emotional and economic injury to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Merck for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

7

## COUNT II
## PLAINTIFFS v. MERCK
## PRODUCTS LIABILITY—DEFECTIVE DESIGN (N.J.S.A. 2A:58C-2 *et seq.*)

41.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

42.     Defendant is a researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of Fosamax, which is defective and unreasonably dangerous to consumers.

43.     The aforementioned drug is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.  The aforementioned drug is defective in design or formulation in that it lacks efficacy and/or it poses a greater likelihood of injury than similar drugs on the market and is more dangerous than ordinary consumers can reasonably foresee.

44.     The defective condition of the aforementioned drug  renders it unreasonably dangerous, and it was in this defective condition at the time it left the hands of Defendant.  The aforementioned drug was expected to and did reach consumers, including Plaintiffs, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

45.     Plaintiffs were unaware of the significant hazards and defects in the aforementioned drug.  The aforementioned drug was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user.  During the period that Plaintiff was taking the aforementioned drug, the medication was being utilized in a manner that was intended by Defendant.  At the time Plaintiff received and consumed the aforementioned drug, it was represented to be safe and free from latent defects.

8

46. Defendant is strictly liable to Plaintiffs for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant because of the design defects.

47. Defendant knew or should have known of the danger associated with the use of the aforementioned drug, as well as the defective nature, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the aforementioned drug so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the aforementioned drug.

48. As a direct and proximate cause of the design defect and Defendant's misconduct as set forth herein, Plaintiff was diagnosed with osteonecrosis of the jaw causing permanent injury and causing physical, emotional and economic injury to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**COUNT III**
**PLAINTIFFS v. MERCK**
**PUNITIVE DAMAGES UNDER THE PRODUCTS LIABILITY ACT (N.J.S.A.2A:58C-1)**

49. Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

50. Plaintiffs are entitled to punitive damages because Defendant's failure to warn was reckless and without regard for the public's safety and welfare. Defendant misled both the medical community and the public at large, including Plaintiffs herein, by making false representations about the safety of Fosamax. Defendant downplayed, understated and/or disregarded its knowledge of the serious and permanent side effects and risks associated with the

9

use of Fosamax despite available information demonstrating that Fosamax was likely to cause serious and even fatal side effects to users.

51.     Defendant was or should have been in possession of evidence demonstrating that Fosamax caused serious side effects.  Nevertheless, Defendant continued to market Fosamax by providing false and misleading information with regard to safety and efficacy.

52.     Defendant failed to provide warnings that would have dissuaded physicians from prescribing Fosamax and consumers from purchasing and consuming Fosamax, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming Fosamax.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Merck for compensatory damages and punitive damages, together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

## COUNT IV
## PLAINTIFFS v. MERCK
## BREACH OF EXPRESS WARRANTY

53.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

54.     Merck manufactured, sold, distributed, marketed, and/or promoted Fosamax used by Plaintiff, and this drug was expected to, and did reach Plaintiff without a substantial change in condition.

55.     Defendant Merck, its agents and employees, in manufacturing, selling, distributing, supplying, marketing and/or promoting the drug Fosamax, expressly warranted that the drug was safe and effective as a medication for osteoporosis.

10

56. Defendant Merck, its agents and employees, breached this warranty in that Fosamax was not safe and effective for its intended, reasonably foreseeable use as a medication for osteoporosis because of the risk of osteonecrosis of the jaw associated with its use and in light of other risks of serious injuries to foreseeable users.

57. Defendant Merck, its agents and employees, failed to provide adequate warnings with Fosamax, rendering it unreasonably dangerous and unfit for the intended, reasonably foreseeable purposes for which it is used, in breach of warranty.

58. Plaintiff justifiably and detrimentally relied upon the warranties and representations of Defendant in the purchase and use of the product.

59. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries. As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of ordinary pursuits and enjoyments of life.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

## COUNT V
## PLAINTIFFS v. MERCK
## VIOLATION OF CONSUMER FRAUD ACT

60. Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

61. Fosamax is a "good" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, hereinafter, the ("Act").

11

62.     Defendant, Merck, is a "person", "company", or "seller" as that term is defined the Act, and as such, is prohibited from engaging in deceptive acts and practices, as set forth more fully below.

63.     The Act prohibits deceptive acts and practices, including but not limited to passing off goods as those of another; representing that goods have specific sponsorship, approval, characteristics, ingredients, benefits, affiliation or status that they do not have; or engaging in fraudulent or deceptive conduct which creates the likelihood of confusion or misunderstanding.

64.     The following acts, uses or employments by Defendant constitute unconscionable commercial practices, deceptions, frauds, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with intent that Plaintiffs rely upon such concealment, suppression or omission, in connection with the sale and marketing of Fosamax, are unlawful under the Act:

      (a) Defendant, having undertaken the manufacturing, marketing, dispensing, distribution, and promotion of the drug described herein, owed a duty to provide accurate and complete information regarding this product;

      (b) Defendant's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Fosamax was safe for human use and did not have unacceptable side effects;

      (c) On information and belief, Defendant misrepresented to Plaintiffs and to members of the general public its knowledge about the propensities of the product to cause injuries such as those sustained by Plaintiff. Defendant

12

concealed, failed to disclose, misstated, downplayed and understated the health hazards and risks associated with the use of Fosamax. Defendant falsely and deceptively kept relevant information from Fosamax users and minimized concerns regarding the safety of Fosamax to induce Plaintiff and the general public to purchase and use Fosamax;

(d) In justifiable and detrimental reliance on the truth of Defendant's representations about the safety of Fosamax, Plaintiff purchased the product and used the product in the manner and for the purpose intended as represented and instructed by Defendant; and

(e) the representations, misrepresentations, acts and omissions made by Defendant deprived Plaintiff and other foreseeable users of Fosamax of the opportunity of free choice as to whether or not to expose themselves to the aforementioned dangers of ingesting Fosamax.

65.     As a direct and proximate result of Plaintiff's lack of awareness of the dangers of Fosamax, caused by the acts and omissions of Defendant, Plaintiff ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries.

66.     As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing her normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of ordinary pursuits and enjoyments of life.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

13

## COUNT VI
## PLAINTIFFS V. MERCK
## NEW JERSEY PRODUCTS LIABILITY ACT

67.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

68.     Defendant is liable to plaintiff pursuant to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 *et seq.*

69.     Defendant is under a duty to supply a product that is reasonably fit, suitable or safe for its intended use, such that it is not unreasonably dangerous and such that it does not cause injury to a reasonably foreseeable user.

70.     Defendant has failed to meet the obligation of supplying a product that is reasonably fit, suitable or safe for its intended purpose and which is not unreasonably dangerous, in that they have placed the product Fosamax into the stream of commerce when Fosamax had been defectively manufactured, defectively designed and failed to contain adequate warnings, labels or instructions.

71.     Plaintiffs alleges that at all times, the product Fosamax was defective when it left Defendant's control and the product was not substantially altered prior to reaching Plaintiff.

72.     As a direct and proximate result of the acts and omissions of Defendant, Plaintiff, a reasonably foreseeable consumer, ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries. As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing her normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of her ordinary pursuits and enjoyments of life.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

14

## COUNT VII
## PLAINTIFFS v. MERCK
## LOSS OF CONSORTIUM

73.     Plaintiffs repeat and incorporate by reference all other paragraphs of this

Complaint as if fully set forth herein.

74.     Plaintiff, Ross Metcalf, is the husband of Plaintiff, Linda Metcalf.

75.     As a result of the injuries suffered by his wife as aforesaid, Plaintiff, Ross

Metcalf, has and will in the future suffer the loss of usual services and consortium of his wife

and has been required to provide special services and care to her.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory

damages, punitive damages and costs of suit as provided by law.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all Counts.

Respectfully submitted,

**ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.**

**DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff**

Dated: 6/28/07

15

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, David Jacoby, Esquire, Tracy A. Finken, Esquire, and Gregory S. Spizer, Esquire, along with Sol H. Weiss, Esquire, pending his admission, are hereby designated as trial counsel for Plaintiffs in the within matter.

Respectfully submitted,

**ANAPOL, SCHWARTZ, WEISS, COHAN FELDMAN & SMALLEY, P.C.**

**DAVID JACOBY, ESQUIRE**
**TRACY A. FINKEN, ESQUIRE**
**GREGORY S. SPIZER, ESQUIRE**
**Attorneys for Plaintiff**

Dated: 6/28/07

16

## NOTICE OF OTHER ACTION

Pursuant to R. 4:5-1, I hereby certify that the matter in controversy is not the subject of any other pending or contemplated court action, arbitration or worker's compensation claim.

Respectfully submitted,

**ANAPOL, SCHWARTZ, WEISS, COHAN FELDMAN & SMALLEY, P.C.**

**DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff**

**Dated:** 6/28/07

## CERTIFICATION

The undersigned certifies that to the best of my knowledge this matter is not the subject

of any other legal or arbitration proceeding in the Courts of New Jersey. The undersigned

further certifies that to the best of my knowledge, no other persons should be a party to this

matter other than those named in this Complaint.

Respectfully submitted,

**ANAPOL, SCHWARTZ, WEISS, COHAN**
**FELDMAN & SMALLEY, P.C.**


**DAVID JACOBY, ESQUIRE**
**TRACY A. FINKEN, ESQUIRE**
**GREGORY S. SPIZER, ESQUIRE**
**Attorneys for Plaintiff**

Dated: 6/28/07

18

# EXHIBIT B



**Hughes**
**Hubbard**

A New York Limited Liability Partnership

Hughes Hubbard & Reed LLP
101 Hudson Street, Suite 3601
Jersey City, New Jersey 07302-3910
Telephone: 201-536-9220
Fax: 201-536-0799
hugheshubbard.com

Robert W. Brundige, Jr.
Wilfred P. Coronato
*Resident Partners*

July 3, 2007

**BY HAND DELIVERY**

Clerk, Law Division
Superior Court of New Jersey, Middlesex County
56 Paterson St.
New Brunswick, NJ 08903-0964

Re:    Linda Metcalf and Ross Metcalf v. Merck & Co., Inc.
       Docket No. L-5836-07

Dear Sir or Madam:

We represent Merck & Co., Inc. ("Merck") in the action captioned above. We respectfully submit for filing an original and two copies of Merck's Notice of Filing Notice of Removal.

Please stamp the extra copies of these papers as "filed" and kindly return them in the enclosed self-addressed envelope. Please charge any fees related to this filing to Hughes Hubbard & Reed's Superior Court account no. 141106. Thank you for your assistance.

Very truly yours,

Bart A. Whitley

Enclosures

cc:    Tracy A. Finken (Counsel for Plaintiff) (via facsimile and Federal Express)
       David Heubeck, Esq.

Wilfred P. Coronato
Bart A. Whitley
HUGHES HUBBARD & REED LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP
101 HUDSON STREET, SUITE 3601
JERSEY CITY, NEW JERSEY 07302-3918
Telephone: (201) 536-9220

Attorneys for Defendant Merck & Co., Inc.

| | |
|---|---|
| LINDA METCALF, and ROSS METCALF, W/H, <br><br> Plaintiff, <br><br> v. <br><br> MERCK & CO., INC., <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY <br><br> DOCKET NO.: L-5836-07 <br><br> <u>CIVIL ACTION</u> <br><br> **NOTICE OF FILING** <br> **<u>NOTICE OF REMOVAL</u>** |

TO:    Tracy A. Finken
       David Jacoby
       Gregory S. Spizer
       Anapol, Schwartz, Weiss, Cohan,
       Feldman, & Smalley, P.C.
       1040 Kings Highway North, Suite 304
       Cherry Hill, NJ 08034

COUNSEL:

      **PLEASE TAKE NOTICE** that in the above entitled action, Defendant
Merck & Co., Inc. ("Merck") has this day filed a Notice of Removal, a copy of which is
attached hereto, in the Office of the Clerk of the United States District Court for the
District of New Jersey ("District Court"). You are also advised that Merck, upon filing
of said Notice of Removal, filed a copy of the Notice with the Clerk of the Superior Court
of New Jersey, Law Division, Middlesex County, which has effected this removal, in
accordance with 28 U.S.C. 1446(b).

                        HUGHES HUBBARD & REED LLP
                        A New York Limited Liability Partnership
                        Attorneys for Defendant, Merck & Co., Inc.

DATED:  July 3, 2007               By:  _____
                                Wilfred P. Coronato
                                Bart A. Whitley

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LINDA METCALF, and ROSS METCALF,

**DEFENDANTS**
Merck & Co., Inc.

**(b)** County of Residence of First Listed Plaintiff   Franklin County, Ohio
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Hunterdon Co., NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Anapol, Schwartz, Weiss, Cohan, Feldman, & Smalley, P.C., 1040 Kings Hwy N., Suite 304. Cherry Hill, NJ 08034, (866) 735-2792

Attorneys (If Known)
Hughes Hubbard & Reed, LLP, 101 Hudson St., Jersey City, NJ 07302, (201) 536-9220

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☒ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Sec. 1332, 1441 and 1446
Brief description of cause:
Products Liability action involving prescription medicine Fosamax.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE

DOCKET NUMBER

DATE   7/3/07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Wilfred P. Coronato (WC-6200)
Bart A. Whitley (BW-3010)
HUGHES HUBBARD & REED LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP
101 HUDSON STREET, SUITE 3601
JERSEY CITY, NEW JERSEY 07302-3910
Telephone: (201) 536-9220
Attorneys for Defendant Merck & Co., Inc.

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA METCALF, and ROSS METCALF, W/H, <br><br> Plaintiffs, <br><br> v. <br><br> MERCK & CO., INC., <br><br> Defendant. | Civil Action No. _____ <br><br><br> **NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446 Defendant

Merck & Co., Inc. ("Merck") hereby gives notice that the above-captioned action, Civil

Action No. L-5836-07, pending in the Superior Court of New Jersey, Law Division,

Middlesex County, is hereby removed to the United States District Court for the District

of New Jersey. In support of removal, Merck respectfully states to the Court the

following:

### THE FOSAMAX® MULTIDISTRICT LITIGATION

1.  This action involves allegations regarding the prescription medication

FOSAMAX®. On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL

Panel") issued an order transferring 18 FOSAMAX® products liability cases to the

United States District Court for the Southern District of New York (Keenan, J.) for

coordinated pretrial proceedings under 28 U.S.C. § 1407. *In re Fosamax Products Liability Litigation*, MDL No. 1789. Processes for quickly sending additional related cases to Judge Keenan have been set in place. To date, the MDL Panel has issued 26 Conditional Transfer Orders, at least 67 cases involving FOSAMAX® have been transferred to MDL-1789, and there are a total of 169 cases pending in the MDL, including cases filed directly in the Southern District of New York.. Merck will seek the transfer of this action to MDL-1789, and will in the next week provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

## GROUNDS FOR REMOVAL

2.      On or about June 29, 2007, Plaintiffs commenced this action entitled *Metcalf, et al., v. Merck & Co., Inc.*, Case No. L-5836-07, against Merck in the Superior Court of New Jersey, Law Division, Middlesex County.

3.      For the reasons set forth in more detail below, this Court should assume jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this matter is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

## I.      MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.      Plaintiffs filed their Complaint in the Superior Court of New Jersey, Law Division, Middlesex County on or about June 29, 2007. Merck has not yet been served with a copy of the Complaint. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

2

5. No further proceedings have been had in this action.

6. Venue is proper in this Court because it is "the district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a). Therefore, this action is properly removed to the District of New Jersey pursuant to 28 U.S.C. § 110.

7. No previous application has been made for the relief requested herein.

8. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by Merck, which include the Complaint and Civil Cover Sheet, are attached hereto at Exhibits A and B.

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A. The amount in controversy requirement is satisfied.

11. It is apparent from the face of the Complaint that Plaintiff Linda Metcalf seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Mrs. Metcalf alleges that, as a result of ingesting FOSAMAX®, she developed "osteonecrosis of the jaw," which Plaintiff alleges "is a serious medical event and can result in severe disability and death," causing her to suffer "diffuse jaw pain and the loss of bone mass

3

in the jaw." (Complaint ¶ 3, 15, 28). Mrs. Metcalf claims that, as a result of using FOSAMAX®, she suffered "severe mental and physical pain and suffering, " as well as "permanent injuries and emotional distress." (Complaint ¶ 29.) Plaintiff Ross Metcalf alleges that he is entitled to damages for loss of consortium. (Complaint, Count VII). The Plaintiffs seek both compensatory and "treble and punitive damages." (Complaint at 7, 15).

12.    While there is not a record of prior cases that specifically involve osteonecrosis of the jaw – a fact which may be attributable to the fact that osteonecrosis of the jaw is a rare disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing the same had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh,* 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods,* 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont,* 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza,* 769 So.2d 88 (La. App.), *writ. denied,* 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday,* 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in

4

damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon,* 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook,* 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal); and

• numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional amount. *See, e.g., Barbee v. United States,* 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States,* 319 F.Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical,* 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon,* 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

13.     The Plaintiff's claims of "severe and permanent" injuries, and the compensatory and punitive damages that they seek thus far exceed this Court's minimum $75,000 jurisdictional limit.

**B.     There is complete diversity between the parties.**

14.     According to the Complaint, Plaintiffs were at the time of the filing of the Complaint and are now citizens of Ohio. (Complaint ¶¶ 1-2.)

5

15.     Merck is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).  (Complaint ¶ 4.)

16.     Hence, there is complete diversity between the parties, and this court has subject matter jurisdiction under 28 U.S.C. § 1332.

**C.    The action is properly removed under 28 U.S.C. § 1446 because no defendant that has been *joined and served* is a resident of New Jersey.**

17.     Merck removes this case pursuant to § 1441(b) on the grounds that "none of the parties in interest *properly* joined *and served* as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).

18.     At the time of the filing of this Notice of Removal, Merck has not been served with a summons and complaint in this action.

19.     As this Court held in *Frick v. Novartis Pharmaceuticals Corp.*, 2006 W.L. 454360 (D.N.J. 2006), removal of this case is proper under the plain language of 28 U.S.C. § 1441(b), because there is no defendant in this case who has been properly joined and served and who is a resident of New Jersey, the state in which this action was brought.  *Frick,* 2006 W.L. 454360, at *3.

WHEREFORE, Defendant Merck respectfully removes this action from the Superior Court of New Jersey, Law Division, Middlesex County to this Court pursuant to 28 U.S.C. § 1441.

Dated: July 3, 2007

> HUGHES HUBBARD & REED LLP
> A New York Limited Liability Partnership
> Attorneys for Defendant
> Merck & Co., Inc.
>
> By: __s/ Bart A. Whitley_____
> Wilfred P. Coronato
> Bart A. Whitley

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the within Notice of Removal as well as a Notice of Filing Notice of Removal was served this day by facsimile and Federal Express in compliance with Rule 5 of the Federal Rules of Civil Procedure upon counsel for plaintiff, Tracy A. Finken, Esq., Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C., 1040 Kings Highway North, Cherry Hill, New Jersey 08034.

Dated: July 3, 2007

> By: __/s Bart A. Whitley_____
> Wilfred P. Coronato
> Bart A. Whitley

# EXHIBIT A

→07/03/07  11:09 FAX 908 688 0885                                        ☒001

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.
BY:   DAVID JACOBY, ESQUIRE
      TRACY A. FINKEN, ESQUIRE
      GREGORY S. SPIZER, ESQUIRE
1040 KINGS HIGHWAY NORTH
CHERRY HILL, NJ 08034
(856) 482-1600; FAX (856) 482-1911
ATTORNEY FOR PLAINTIFFS

FILED & RECEIVED

## IN THE SUPERIOR COURT OF NEW JERSEY
### LAW DIVISION – MIDDLESEX COUNTY

| | |
|---|---|
| LINDA METCALF, and<br>ROSS METCALF, W/H<br>**Plaintiffs**<br><br>v.<br><br>MERCK & CO., INC.<br>**Defendant** | Civil Action No. L-5836-07<br><br>Fosamax Litigation<br><br>COMPLAINT, DEMAND<br>FOR JURY TRIAL,<br>DESIGNATION OF TRIAL<br>COUNSEL AND NOTICE OF<br>NO OTHER ACTIONS |

Plaintiffs, Linda and Ross Metcalf, by way of Complaint against Defendant, upon information and belief, alleges as follows:

### PARTIES—PLAINTIFFS

1.    Plaintiff, Linda Metcalf, is a citizen of Ohio, residing at 5419 Lanark Court, Dublin, Ohio 43017-8540.

2.    Plaintiff, Ross Metcalf, is a citizen of Ohio, residing at 5419 Lanark Court, Dublin, Ohio 43017-8540.

3.    Plaintiff, Linda Metcalf, regularly ingested Fosamax in the months and years leading up to her diagnosis of osteonecrosis of the jaw.

## PARTIES—DEFENDANT

4.      Defendant, Merck & Co., Inc. (hereinafter "Merck"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, NJ 08889.

5.      At all times relevant hereto, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling, and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical, Fosamax.

6.      At all relevant times, Defendant was responsible for, or involved in, designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing and/or selling its product, the prescription drug Fosamax.

7.      In September 1995, the United States Food and Drug Administration ("FDA") approved Defendant's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease. Alendronate is marketed by Defendant as "Fosamax."

8.      Fosamax falls within a class of drugs known as bisphosphonates, which are used for treating bone conditions such as ostepenia, osteoporosis and Paget's disease. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following; pamidronate (Aredia); ibandronate (Bondronat); and alendronate (Fosamax). The non-nitrogenous bisphosphonates include the following:  etrinodate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for Fosamax confirms that the molecule contains a nitrogen atom.

9.      Throughout the 1990's and 2000's, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the

JUL Case 07:07-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv-09-cv

.07/03/07, 11:10 FAX 908 688 0885          GUARANTEED SUBPOENA

nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Defendant, particularly with its heightened knowledge and experience, knew or should have known that Fosamax, as a nitrogenous bisphosphonates, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

10.    Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates, including Fosamax, inhibit endothelial cell function. Similarly, Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patient's mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

11.    Defendant, particularly with its heightened knowledge and experience, also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That, in turn, can progress to widespread necrosis (bone death) and ostemony elitis (inflammation of bone marrow).

12.    Dentists are now being advised by dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on Fosamax.

13.    Once the jaw complications begin and become symptomatic, they are very difficult to treat and typically are not reversible.

14.    Shortly after Defendant began selling Fosamax, reports of osteonecrosis of the jaw and other various dental complications among Fosamax users began surfacing, indicating

3

that Fosamax shared the effects of other nitrogenous bisphosphonates. Despite this knowledge,

Defendant failed to implement further study risk of osteonecrosis of the jaw relative to Fosamax.

Rather than evaluating and verifying the safety of Fosamax with respect to osteonecrosis of the

jaw, Defendant proposed further uses of Fosamax, such as Fosamax-D, and sought to extend the

exclusivity period of Fosamax through 2018.

15.   Osteonecrosis of the jaw is a serious medical event and can result in severe

disability and death.

16.   Since Fosamax was released, the FDA has received a significant number of

reports of osteonecrosis of the jaw among users of Fosamax.

17.   On August 24, 2004, the FDA posted its ODS Postmarketing Safety Review on

bisphosphonates, including Fosamax. This was an epidemiologic review of the FDA adverse

events database conducted by the FDA's Division of Drug Risk Evaluation.

18.   As a result of the FDA review, the FDA observed that the risk of osteonecrosis of

the jaw was not confined to bisphosphonates used for chemotherapy. The review indicated that

the osteonecrosis of the jaw was a class effect which specifically extended to the oral

bisphosphonate, Fosamax.

19.   Thereafter, the FDA recommended and stated that the labeling for Fosamax

should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw.

Defendant refused to accede to the FDA's request.

20.   Rather than warn patients, and despite Defendant's knowledge about the

increased risk of osteonecrosis of the jaw on patients using Fosamax, Defendant continued to

defend Fosamax, mislead physicians and the public, and minimize unfavorable findings.

21.     Fosamax is one of Defendant's top selling drugs, averaging more that $3 billion a year in sales.

22.     Consumers, including Plaintiff, who have used Fosamax for treatment of osteoporosis, had several alternative safer products available to treat their condition.

23.     Defendant knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but Defendant did not adequately and sufficiently warn consumers, including Plaintiffs, or the medical community, of such risks.

24.     As a direct result, Plaintiff was prescribed Fosamax and has been permanently injured, having suffered serious injuries and damages from the ingestion of Fosamax.  Plaintiff requires and will in the future require ongoing medical care and treatment.

25.     Plaintiffs have suffered mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained form the use of Fosamax.

26.     Plaintiff was prescribed and began taking Fosamax on or about June of 2000.

27.     Plaintiff used Fosamax as prescribed and in a foreseeable manner.

28.     As a direct and proximate result of using Fosamax, Plaintiff has suffered diffuse jaw pain and the loss of bone mass in the jaw and is currently in treatment for her condition.

29.     Plaintiff, as a direct and proximate result of using Fosamax, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

30.     Plaintiff used Fosamax which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

5

31.     Plaintiff would not have used Fosamax had Defendant properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known of the risks of Fosamax and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

32.     Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking Fosamax.

33.     As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

### COUNT I
### PLAINTIFFS v. MERCK
### PRODUCTS LIABILITY—FAILURE TO WARN (N.J.S.A. 2A:58C-2 *et seq.*)

34.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

35.     Defendant Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, Fosamax, and in the course of same, directly advertised or marketed the product to the FDA, consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Fosamax.

36.     Fosamax was under the exclusive control of Defendant as aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side effects and complications associated with the use of Fosamax, and the comparative severity, duration and the extent of the risk of injury with such use.

6

JUL 03 2007 16:04 FR HUGHES HUBBARD          2015360799 TO 18564821911          P. 19/31
07/03/07  11:11 FAX 908 688 0885          GUARANTEED SUBPOENA                        ☐007

Case 3:07-cv-03072-JB Document 2-5 Filed 08/28/2007 Page 54 of 67

37. Defendant Merck has failed to timely and reasonably warn of material facts regarding the safety and efficacy of Fosamax so that no medical care provider would have prescribed, or no consumer would have used Fosamax had those facts been made known to such providers and consumers.

38. Defendant Merck has failed to perform or otherwise facilitate adequate testing in that such testing would have shown that Fosamax posed serious and potentially life-threatening side effects and complications with respect to which full and proper warnings accurately and fully reflecting the symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiffs.

39. Fosamax, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendant, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of Fosamax, Defendant failed to provided adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiffs, and continued to promote Fosamax aggressively.

40. As direct and proximate result of the conduct of Defendant Merck as aforesaid, Plaintiff was diagnosed with osteonecrosis of the jaw causing permanent injury to Plaintiff, Linda Metcalf, and causing physical, emotional and economic injury to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Merck for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

7

**COUNT II**
**PLAINTIFFS v. MERCK**
**PRODUCTS LIABILITY—DEFECTIVE DESIGN (N.J.S.A. 2A:58C-2 *et seq.*)**

41.     Plaintiffs repeat and incorporate by reference all other paragraphs of this
Complaint as if fully set forth herein.

42.     Defendant is a researcher, developer, manufacturer, distributor, marketer,
promoter, supplier and seller of Fosamax, which is defective and unreasonably dangerous to
consumers.

43.     The aforementioned drug is defective in its design or formulation in that it is not
reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the
benefits associated with its design and formulation. The aforementioned drug is defective in
design or formulation in that it lacks efficacy and/or it poses a greater likelihood of injury than
similar drugs on the market and is more dangerous than ordinary consumers can reasonably
foresee.

44.     The defective condition of the aforementioned drug renders it unreasonably
dangerous, and it was in this defective condition at the time it left the hands of Defendant. The
aforementioned drug was expected to and did reach consumers, including Plaintiffs, without
substantial change in the condition in which it was designed, manufactured, labeled, sold,
distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

45.     Plaintiffs were unaware of the significant hazards and defects in the
aforementioned drug. The aforementioned drug was unreasonably dangerous in that it was more
dangerous than would be reasonably contemplated by the ordinary user. During the period that
Plaintiff was taking the aforementioned drug, the medication was being utilized in a manner that
was intended by Defendant. At the time Plaintiff received and consumed the aforementioned
drug, it was represented to be safe and free from latent defects.

8

46.     Defendant is strictly liable to Plaintiffs for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant because of the design defects.

47.     Defendant knew or should have known of the danger associated with the use of the aforementioned drug, as well as the defective nature, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the aforementioned drug so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the aforementioned drug.

48.     As a direct and proximate cause of the design defect and Defendant's misconduct as set forth herein, Plaintiff was diagnosed with osteonecrosis of the jaw causing permanent injury and causing physical, emotional and economic injury to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### COUNT III
### PLAINTIFFS v. MERCK
### PUNITIVE DAMAGES UNDER THE PRODUCTS LIABILITY ACT (N.J.S.A.2A:58C-1)

49.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

50.     Plaintiffs are entitled to punitive damages because Defendant's failure to warn was reckless and without regard for the public's safety and welfare. Defendant misled both the medical community and the public at large, including Plaintiffs herein, by making false representations about the safety of Fosamax. Defendant downplayed, understated and/or disregarded its knowledge of the serious and permanent side effects and risks associated with the

9

use of Fosamax despite available information demonstrating that Fosamax was likely to cause serious and even fatal side effects to users.

51.    Defendant was or should have been in possession of evidence demonstrating that Fosamax caused serious side effects. Nevertheless, Defendant continued to market Fosamax by providing false and misleading information with regard to safety and efficacy.

52.    Defendant failed to provide warnings that would have dissuaded physicians from prescribing Fosamax and consumers from purchasing and consuming Fosamax, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming Fosamax.

WHEREFORE, Plaintiffs demand judgment against Defendant Merck for compensatory damages and punitive damages, together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

### COUNT IV
### PLAINTIFFS v. MERCK
### BREACH OF EXPRESS WARRANTY

53.    Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

54.    Merck manufactured, sold, distributed, marketed, and/or promoted Fosamax used by Plaintiff, and this drug was expected to, and did reach Plaintiff without a substantial change in condition.

55.    Defendant Merck, its agents and employees, in manufacturing, selling, distributing, supplying, marketing and/or promoting the drug Fosamax, expressly warranted that the drug was safe and effective as a medication for osteoporosis.

10

56.     Defendant Merck, its agents and employees, breached this warranty in that Fosamax was not safe and effective for its intended, reasonably foreseeable use as a medication for osteoporosis because of the risk of osteonecrosis of the jaw associated with its use and in light of other risks of serious injuries to foreseeable users.

57.     Defendant Merck, its agents and employees, failed to provide adequate warnings with Fosamax, rendering it unreasonably dangerous and unfit for the intended, reasonably foreseeable purposes for which it is used, in breach of warranty.

58.     Plaintiff justifiably and detrimentally relied upon the warranties and representations of Defendant in the purchase and use of the product.

59.     As a direct and proximate result of the acts and omissions of Defendant, Plaintiff ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries. As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

### COUNT V
### PLAINTIFFS v. MERCK
### VIOLATION OF CONSUMER FRAUD ACT

60.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

61.     Fosamax is a "good" as that term is defined in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, hereinafter, the ("Act").

11

62.     Defendant, Merck, is a "person", "company", or "seller" as that term is defined the Act, and as such, is prohibited from engaging in deceptive acts and practices, as set forth more fully below.

63.     The Act prohibits deceptive acts and practices, including but not limited to passing off goods as those of another; representing that goods have specific sponsorship, approval, characteristics, ingredients, benefits, affiliation or status that they do not have; or engaging in fraudulent or deceptive conduct which creates the likelihood of confusion or misunderstanding.

64.     The following acts, uses or employments by Defendant constitute unconscionable commercial practices, deceptions, frauds, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with intent that Plaintiffs rely upon such concealment, suppression or omission, in connection with the sale and marketing of Fosamax, are unlawful under the Act:

    (a) Defendant, having undertaken the manufacturing, marketing, dispensing, distribution, and promotion of the drug described herein, owed a duty to provide accurate and complete information regarding this product;

    (b) Defendant's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Fosamax was safe for human use and did not have unacceptable side effects;

    (c) On information and belief, Defendant misrepresented to Plaintiffs and to members of the general public its knowledge about the propensities of the product to cause injuries such as those sustained by Plaintiff. Defendant

concealed, failed to disclose, misstated, downplayed and understated the

health hazards and risks associated with the use of Fosamax. Defendant

falsely and deceptively kept relevant information from Fosamax users and

minimized concerns regarding the safety of Fosamax to induce Plaintiff and

the general public to purchase and use Fosamax;

(d)  In justifiable and detrimental reliance on the truth of Defendant's

representations about the safety of Fosamax, Plaintiff purchased the product

and used the product in the manner and for the purpose intended as

represented and instructed by Defendant; and

(e)  the representations, misrepresentations, acts and omissions made by

Defendant deprived Plaintiff and other foreseeable users of Fosamax of the

opportunity of free choice as to whether or not to expose themselves to the

aforementioned dangers of ingesting Fosamax.

65.    As a direct and proximate result of Plaintiff's lack of awareness of the dangers of

Fosamax, caused by the acts and omissions of Defendant, Plaintiff ingested Fosamax and

developed osteonecrosis of the jaw which resulted in physical impairment and other injuries.

66.    As a further direct and proximate result of the acts and omissions of Defendant,

Plaintiff has been prevented from pursuing her normal activities and employment, has

experienced severe pain and suffering and mental anguish, and has been deprived of ordinary

pursuits and enjoyments of life.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory

damages, punitive damages and costs of suit as provided by law.

13

## COUNT VI
## PLAINTIFFS V. MERCK
## NEW JERSEY PRODUCTS LIABILITY ACT

67.   Plaintiffs repeat and incorporate by reference all other paragraphs of this

Complaint as if fully set forth herein.

68.   Defendant is liable to plaintiff pursuant to the New Jersey Products Liability Act,

N.J.S.A. 2A:58C-1 *et seq.*

69.   Defendant is under a duty to supply a product that is reasonably fit, suitable or

safe for its intended use, such that it is not unreasonably dangerous and such that it does not

cause injury to a reasonably foreseeable user.

70.   Defendant has failed to meet the obligation of supplying a product that is

reasonably fit, suitable or safe for its intended purpose and which is not unreasonably dangerous,

in that they have placed the product Fosamax into the stream of commerce when Fosamax had

been defectively manufactured, defectively designed and failed to contain adequate warnings,

labels or instructions.

71.   Plaintiffs alleges that at all times, the product Fosamax was defective when it left

Defendant's control and the product was not substantially altered prior to reaching Plaintiff.

72.   As a direct and proximate result of the acts and omissions of Defendant, Plaintiff,

a reasonably foreseeable consumer, ingested Fosamax and developed osteonecrosis of the jaw

which resulted in physical impairment and other injuries. As a further direct and proximate

result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing her

normal activities and employment, has experienced severe pain and suffering and mental

anguish, and has been deprived of her ordinary pursuits and enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory

damages, punitive damages and costs of suit as provided by law.

14

## COUNT VII
## PLAINTIFFS v. MERCK
## LOSS OF CONSORTIUM

73.     Plaintiffs repeat and incorporate by reference all other paragraphs of this

Complaint as if fully set forth herein.

74.     Plaintiff, Ross Metcalf, is the husband of Plaintiff, Linda Metcalf.

75.     As a result of the injuries suffered by his wife as aforesaid, Plaintiff, Ross

Metcalf, has and will in the future suffer the loss of usual services and consortium of his wife

and has been required to provide special services and care to her.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory

damages, punitive damages and costs of suit as provided by law.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all Counts.

Respectfully submitted,

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.

DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff

Dated: 6/28/07

15

# DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, David Jacoby, Esquire, Tracy A. Finken, Esquire, and Gregory S.

Spizer, Esquire, along with Sol H. Weiss, Esquire, pending his admission, are hereby designated

as trial counsel for Plaintiffs in the within matter.

Respectfully submitted,

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.

DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff

Dated: 6/28/07

JUL-03-2007 15:06 FR HUGHES HUBBARD                2815768799 TO 18564824941      P.29/34
07/03/97  11:14 FAX 908 688 0885          GUARANTEED SUBPOENA                      @018

## CERTIFICATION

The undersigned certifies that to the best of my knowledge this matter is not the subject

of any other legal or arbitration proceeding in the Courts of New Jersey. The undersigned

further certifies that to the best of my knowledge, no other persons should be a party to this

matter other than those named in this Complaint.

Respectfully submitted,

ANAPOL, SCHWARTZ, WEISS, COHAN
FELDMAN & SMALLEY, P.C.

DAVID JACOBY, ESQUIRE
TRACY A. FINKEN, ESQUIRE
GREGORY S. SPIZER, ESQUIRE
Attorneys for Plaintiff

Dated: 6/28/07

18

# EXHIBIT B

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

FOR USE BY CLERK'S OFFICE ONLY
PAYMENT TYPE : CK     CG     CA
CHG / CK NO.
AMOUNT :
OVERPAYMENT:
BATCH NUMBER:

| | |
|---|---|
| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER |
| David Jacoby, Esq. & Tracy A. Finken, Esq. | ( 856 )482-1600 |

FIRM NAME (if applicable)
Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.

OFFICE ADDRESS
1040 Kings Highway North, Suite 304
Cherry Hill, NJ 08034

COUNTY OF VENUE
Middlesex County

DOCKET NUMBER (When available)
L-5836-07

DOCUMENT TYPE
Complaint

JURY DEMAND     [X] YES     [ ] NO

FILED & RECEIVED

NAME OF PARTY (e.g. John Doe, Plaintiff)
Linda Metcalf & Ross Metcalf, W/H

CAPTION
Metcalf v. Merck & Co., Inc.

CASE TYPE NUMBER
(See reverse side for listing)
606

IS THIS A PROFESSIONAL MALPRACTICE CASE?   [ ] YES  [X] NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

RELATED CASES PENDING?   [ ] YES   [X] NO
IF YES, LIST DOCKET NUMBERS

DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?   [ ] YES   [X] NO

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN
[ ] NONE   [X] UNKNOWN

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   [ ] YES  [X] NO
IF YES, IS THAT RELATIONSHIP?   [ ] EMPLOYER - EMPLOYEE   [ ] FRIEND / NEIGHBOR   [ ] OTHER (explain)
[ ] FAMILIAL   [ ] BUSINESS

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   [ ] YES   [X] NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   [ ] YES   [X] NO
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION

WILL AN INTERPRETER BE NEEDED?   [ ] YES   [X] NO
IF YES, FOR WHAT LANGUAGE?

ATTORNEY SIGNATURE

Revised July 2001

## <u>CERTIFICATE OF SERVICE</u>

I, GREGORY S. SPIZER, ESQUIRE, do hereby certify that, on this 1st day of August, 2007, I electronically served a true and correct copy of the foregoing Plaintiff's Motion to Remand, supporting Memorandum with Exhibits, and proposed Order via the District Court of New Jersey's Electronic Case Filing system ("ECF") upon the following:

> Wilfred P. Coronato
> Bart A. Whitley
> HUGHES HUBBARD & REED LLP
> 101 Hudson Street, Suite 3601
> Jersey City, NJ 07302-3918
>
> Attorneys for Defendant

_____
GREGORY S. SPIZER